IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN KEITH FITZGERALD, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 12-4145 |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of the | : | |
| Social Security Administration, | : | |
|     Defendant. | : | |

## REPORT AND RECOMMENDATION

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                    January 31 , 2013

### I. INTRODUCTION AND PROCEDURAL HISTORY

On July 20, 2012, Plaintiff initiated this litigation by filing a complaint seeking review of a final administrative decision of the Defendant Commissioner denying a claim for disability benefits that he initiated in 2009. (Doc. No. 1.) Plaintiff requests that his "claims for a period of disability, disability insurance benefits, and Supplemental Security Income be allowed and that the Defendant be ordered to pay such benefits," or, alternatively, that the Court "remand this case to the Defendant for a fair hearing." (Compl. at 2.) The basis for his complaint is that "[t]he decision of the Defendant that the Plaintiff is not disabled within the meaning of the Social Security Act is not supported by substantial evidence and applies an erroneous standard of law." (*Id.* at 1-2, ¶ 5.)

The matter was referred to us by the Honorable Gene E.K. Pratter for preparation of a Report and Recommendation. (Doc. No. 3.) Pursuant to the Procedural Order for Social Security Review issued by Judge Pratter on September 5, 2012 (Doc. No. 4), Defendant filed and served an answer and a certified copy of the transcript of the administrative record on September

25, 2012. (Doc. Nos. 5-7.) Plaintiff was directed to file and serve "Plaintiff's Brief and Statement of Issues in Support of Request for Review" within 45 days of service of Defendant's answer. This filing was to "set forth clearly and concisely each issue presented for review arising from: (1) specific findings the Plaintiff contends are not supported by substantial evidence; (2) alleged evidentiary or administrative errors; and (3) alleged legal errors." (Doc. No. 4, ¶ 3.)

Plaintiff did not file his brief, which would have been due on or about November 12, 2012, nor did he request an extension of time to do so. *See also id.* ¶ 8 ("No extensions of time will be permitted without order of the Court."). More than 100 days have passed since Defendant filed and served upon Plaintiff the documents necessary for preparation and filing of Plaintiff's brief.

In light of these circumstances, on January 15, 2013, we entered an Order to Show Cause. (Doc. No. 8.) The order directed counsel for Plaintiff to show cause in writing on or before January 25, 2013 why we should not "either recommend that the matter be dismissed for lack of prosecution or deem the case submitted and ready for immediate determination without the benefit of a brief." (*Id.*) We offered as an alternative that Plaintiff could instead submit the brief by that date. January 25th came and went with no response or communication of any kind from Plaintiff.

II. **THE EFFECT OF PLAINTIFF'S VIOLATIONS OF COURT ORDERS**

We have considered whether it would be appropriate for the Court to dismiss this matter *sua sponte* for failure to prosecute pursuant to the inherent power of courts to "clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962). *See also id.* at 631-

32 (holding that Fed. R. Civ. Proc. 41(b), which provides for defendants to move to dismiss for failure to prosecute or to comply with court order, does not restrict court's power to dismiss case *sua sponte*). At least one other court took this course in a Social Security appeal where the plaintiff failed to file papers in support of her request for review or to respond to a show cause order as to why her case should not be dismissed when she did not respond to the Commissioner's dispositive motion. *See Gonzalez v. Commissioner of Social Security*, No. 09 Civ. 10179(RJS), 2011 WL 22077574 (S.D.N.Y. June 2, 2011).

Our Court of Appeals, however, considers dismissals with prejudice for counsel's failure to meet court-imposed deadlines to be "drastic" and "extreme" sanctions, to be reserved for comparably extreme conduct. *See Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 867-68 (3d Cir. 1984). Courts are to consider the following factors to determine whether dismissal is appropriate:

> (1) the extent of the *party*'s personal *responsibility*; (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith*; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions*; and (6) the *meritoriousness* of the claim or defense.

*Poulis*, 747 F.2d at 868 (emphasis in original). Applying the *Poulis* factors to this case: (1) we see no evidence that Fitzgerald himself is personally responsible for counsel's failure to file the brief in support of his request for review or to respond to our Show Cause Order; (2) the Commissioner is not prejudiced by Plaintiff's counsel's failure to brief the matter inasmuch as he is under no duty under the Procedural Order issued in this case to file any brief until Plaintiff's brief is filed; (3) there is no history of dilatoriness by Fitzgerald or his counsel in this Court of

which we are aware, apart from the failure to file the brief in accordance with the Procedural Order and to respond to the Show Cause Order; (4) we have no evidence from which to conclude that counsel's conduct in not filing the brief or responding to the Show Cause Order reflects willful misconduct or bad faith; and (5) an alternative sanction that might be appropriate is consideration of the appeal without the benefit of Plaintiff's argument in support of his request for review. Finally, while it is difficult to preview the merit of Plaintiff's claim without benefit of his brief (Factor 6), the standard of review for Social Security cases is such that, absent the commission of an error of law by the Administrative Law Judge ("ALJ"), the decision will be upheld if it is supported by "substantial evidence," which, as discussed below, is not a high threshold. Accordingly, as we indicated in our Show Cause Order that we might do, we proceed to assess the merits of Plaintiff's request for review on the administrative record before us.

### III. STANDARD OF REVIEW

The Court has plenary review of legal issues arising from the ALJ's conclusions but reviews the ALJ's factual findings only to determine whether they are supported by substantial evidence. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)); *Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). It is "more than a mere scintilla" but may be "less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). If the conclusion of the ALJ is supported by substantial evidence, the Court may not set aside the Commissioner's decision even if it would have decided the factual inquiry

differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). *See also* 42 U.S.C. § 405(g).

## IV. LEGAL ANALYSIS

Fitzgerald alleged disability due to poor memory, irritability, and frustration. He had previously sought disability benefits on the same bases with the same alleged disability onset of June 1, 2006, but received an unfavorable decision on October 14, 2008 upon an ALJ's finding that he could perform other work notwithstanding limitations that prevented him from returning to his past work. (R. 58-66.)

The ALJ adjudicating his second application held a hearing on November 29, 2010 at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. The ALJ rendered his unfavorable decision on January 4, 2011. (R. 21-34.) This decision serves as the final decision of the Commissioner and thus the decision under review in this case. (*See* R. 1-4.)[1]

### A. The decision under review

The issue before the ALJ was whether Fitzgerald was disabled under the Act and, because there was medical evidence of a substance use disorder, "whether the substance use disorder was a contributing factor material to the determination of disability." (R. 21.) If it was, then Fitzgerald would not be considered "under a disability." *Id. See also* 20 C.F.R. §404.1535(a). In making his determinations as to these issues, the ALJ began with the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a). At Step

---

[1] Before filing his complaint in federal court, Fitzgerald sought review, as he must, in the Social Security Appeals Council. Although it does not appear that he submitted a letter brief, he did provide additional medical records. The Appeals Council considered those records but found that they did not provide a basis for changing the ALJ's decision. As it found no other reason to review the ALJ's decision, the Appeals Council denied Plaintiff's request for review. (R. 1-4.)

One, the ALJ found that Fitzgerald had not engaged in substantial gainful activity at any time since the alleged disability onset date. (R. 24, Finding No. 2.) At Step Two, he found that Plaintiff demonstrated that he suffered from a severe medically-determinable impairment, e.g., one that causes functional limitations and has more than a *de minimus* effect on his ability to perform basic work activities. (R. 24, Finding No. 3.)[2] At Step Three, the ALJ concluded that Plaintiff suffered from an impairment or combination of impairments that satisfied the criteria of Listings 12.04 (Affective Disorders) and 12.09 (Substance Addiction Disorders) of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24-25.) The Step Three finding meant that Fitzgerald was disabled.

In light of the evidence of substance use,[3] however, the ALJ was required to return to the sequential analysis to determine if the substance use disorder was "a contributing factor material to" that determination of disability. This required the ALJ to "evaluate the extent to which the claimant's mental and physical limitations would remain if the claimant stopped the substance use." (R. 23.) Returning to Step Two, he found that Fitzgerald still had a severe impairment that imposed ongoing limitations absent alcohol abuse, noting Fitzgerald's traumatic brain injury.

---

[2] The ALJ identified Fitzgerald's severe impairments as alcohol abuse, bipolar disorder, and a remote history of traumatic brain injury. That injury apparently dated to an accident twenty-five years before. In the interim, Fitzgerald had worked as a carpenter for some 22 years. (R. 26-27.)

[3] Fitzgerald received inpatient treatment in August 2009 for alcohol abuse. He was seeing an addiction counselor at the time of the hearing. The counselor's notes documented continued drinking in August 2010.

Plaintiff had testified at the hearing in late November 2010 that he had been sober for six months. When confronted with his counselor's notes reflecting drinking as late as August 2010, Plaintiff modified his period of sobriety to the last four to six months. The ALJ found that the records from Fitzgerald's addictions counselor "make it clear that [his] alcohol abuse is still active" and that his testimony that he had stopped drinking was not credible. (R. 27.)

(R. 25, Finding No. 5.) Proceeding to Step Three, which required him to assess whether Fitzgerald met or equaled any of the listings due to impairments that remained if he were to stop his substance use, the ALJ found that Fitzgerald did not meet or medically equal any listing. Considering Listing 12.02 (Organic Mental Disorders) specifically, he found that Plaintiff could not satisfy the "Paragraph B" criteria, in that he was not "markedly" restricted in any two areas of functioning, nor the "Paragraph C" criteria that required a record of repeated episodes of decompensation or a history of inability to function outside of a highly supportive living arrangement. (R. 25, Finding No. 6.)[4] As Fitzgerald could not establish his entitlement to benefits at Step Three, the evaluation process continued.

The ALJ then proceeded to make a finding as to Fitzgerald's residual functional capacity ("RFC"), which is defined as "the most [a claimant] can still do despite [his] limitations." *See* 20 C.F.R. § 416.945(a)(1). The ALJ found that, if Fitzgerald discontinued his substance abuse, he could perform a full range of work at all exertional levels but limited to unskilled work that is low stress and involves no public contact. (R. 26, Finding No. 7.) At Step Four, the ALJ found

---

[4] "Paragraph B" of the listing requires a finding that at least two of the following result from the mental condition:

    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration[.]

20 C.F.R. § 404, App. 1, § 12.02. When the ALJ considered Fitzgerald's impairments initially, not excluding the substance use, he found that Fitzgerald had marked difficulties in maintaining social functioning; marked difficulties with regard to concentration, persistence, or pace; and that he had experience one to two episodes of decompensation. (R. 25.) When he considered Fitzgerald's limitations were he not using alcohol, he found that Plaintiff would have only "moderate" difficulties in social functioning and in concentration, persistence, or pace. The ALJ also found that Fitzgerald would have no episodes of decompensation if his alcohol use stopped. (*Id.*)

that, with that RFC, Fitzgerald could not perform his past work as a carpenter, which is considered skilled work. (R. 28, Finding No. 8.) At Step Five, the ALJ considered whether Fitzgerald could make an adjustment to work based on his RFC, age (37), education (high school), and work experience, in conjunction with the Medical-Vocational Guidelines found in Appendix 2 to Subpart P of Part 404 of the Regulations.[5] *See* 20 C.F.R. § 404.1520(g). Considering the limitations outlined by the ALJ that were ultimately incorporated into his RFC finding, the VE identified jobs existing in the local and national economy that Plaintiff could perform, including the positions of laundry laborer, industrial cleaner, and inspector packer. (R. 28-29, Finding No. 12.) Accordingly, the ALJ concluded at Step Five that, if Fitzgerald stopped his substance use, he would be capable of making a successful adjustment to work that exists in significant numbers in the national economy. (R. 28-29, Finding No. 12.) Based upon these findings, the ALJ determined that Plaintiff's substance use disorder was "a contributing factor material to the determination of disability" and that he therefore could not be considered disabled within the meaning of the Act at any time since the alleged onset. (R. 29-30 & Finding No. 13.)

### B. Whether there is a basis to vacate the ALJ's decision

Having reviewed the ALJ's decision with some care, no error of law is apparent to us. Rather, following what appears to be a full and fair hearing, *cf.* Compl. at 2 (seeking remand "for a fair hearing"), the ALJ applied the sequential evaluation process set forth in the Regulations. This included subjecting his initial finding at Step Three to the analysis of the impact of

---

[5] Section 204.00 of the Medical-Vocational Guidelines, cited by the ALJ, provides generally that an RFC to perform heavy work or very heavy work generally is sufficient for a finding of not disabled. In that Fitzgerald was found to have several non-exertional impairments, this section was used by the ALJ only as "a framework for decisionmaking." *See* R. 29 (citing SSR 85-15).

Plaintiff's alcohol use on his disability.[6] The ALJ's finding that Plaintiff could not meet the "Paragraph B" criteria of the Listings based only upon his traumatic brain injury were supported by comparison of the assessment of his mental health therapist, who offered an opinion based upon Plaintiff's mental health difficulties *and* his substance abuse history, and an opinion of his neurologist based upon his traumatic brain injury. *See* R. 27-28. The neurologist opined that Fitzgerald's limitations due to his head injury were "moderate" at most. Although the form he completed permitted him to rate any of Plaintiff's restrictions as "marked" or "extreme," he did not do so. (R. 394-96.) *Cf.* Listing 12.02, ¶ B (requiring restrictions at the "marked" level).

The ALJ acted in accordance with the Regulations in giving greater weight to the opinion of the medical specialist than to an opinion expressed by the addictions counselor as to the role his traumatic brain injury played in his symptoms vis-à-vis the alcohol.[7] The ALJ's RFC finding was supported by the objective treatment records and the medical source statement provided in the record by the treating neurologist. The RFC that was ultimately adopted by the ALJ was also put to the VE, who provided testimony that supported the ALJ's Step Five finding that at least three job titles exist that could be performed by someone with Plaintiff's non-exertional limitations. Accordingly, we conclude that the ALJ's determination that Fitzgerald would not be disabled if he stopped his substance use properly supported his finding that Plaintiff was not

---

[6] We find substantial evidence to support the ALJ's finding that Plaintiff continued to abuse alcohol throughout the period at issue. *See, e.g.,* R. 376, 378, 380 (notes of addiction counselor documenting admissions of alcohol use around July and August 2010).

[7] The ALJ justifiably found the counselor's opinion on this subject not to reflect her expertise in the matter but rather to reflect what Fitzgerald expressed to her as his belief of the effect of his dual diagnosis. *See* R. 398 (counselor's response to question on form seeking contribution of substance use to limitations: "*Client reports* that his impairment is due to a brain injury that occurred several years ago. While abstinence is supported, it does not appear [that] abstinence from alcohol would improve the client's condition *as he reports it*.") (emphasis added).

disabled.

## V. CONCLUSION

We find that Plaintiff, who did not take advantage of opportunities to more fully explain the basis for his request for review, has not met his burden to show that the ALJ's decision is the product of legal error or that it is not supported by substantial evidence. We see no basis for the Court to set aside the final decision of the Commissioner pursuant to 42 U.S.C. §§ 405(g) and 1383(c). Our recommendation follows.

## **R E C O M M E N D A T I O N**

AND NOW, this 31st day of January, 2013, upon consideration of the complaint (Doc. No. 1) and the administrative record (Doc. No. 6), and for the reasons set forth above, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED.

BY THE COURT:


/s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE